**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**HARRY D. WEIST and**
**DIANE M. WEIST, his spouse,**

                              **Plaintiffs,**                    **05-CV-0534S(Sr)**

**v.**

**E.I. DUPONT DE NEMOURS AND**
**COMPANY, et al.,**

                              **Defendants.**

───────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report

upon dispositive motions.  Dkt. #4.  Following Chief Judge Arcara's recusal, the matter

was transferred to the Hon. William M. Skretny.  Dkt. #64.


Currently before the Court is defendant First Chemical Corporation's

motion for summary judgment (Dkt. #18), and defendant E.I. DuPont De Nemours &

Company's ("DuPont's"), motion for summary judgment seeking dismissal of paragraph

20(g) of plaintiffs' complaint.  Dkt. #19.  For the following reasons, it is recommended

that the motions for summary judgment be granted.

## BACKGROUND

Plaintiff Harry D. Weist has been employed at Goodyear Tire and Rubber Company ("Goodyear"), since December 21, 1977.  Dkt. #1, ¶ 7.  During the period of 1981 through 1990, he alleges workplace exposure to ortho-toluidine, a chemical which was manufactured and distributed to Goodyear by the defendants.  Dkt. #1, ¶ ¶ 7-8; Dkt. #22-2, ¶ 1.  Plaintiffs allege that this exposure caused Harry D. Weist to suffer personal injuries, including bladder cancer, and that his wife, Diane M. Weist, has suffered loss of consortium.  Dkt. #1, ¶¶  9 & 24.  Plaintiffs seek to hold defendants responsible on theories of strict liability and negligence.  Dkt. #1.  Of relevance to the instant motion, plaintiffs allege that:

> Defendants, and/or their predecessors-in-interest, failed in their duty to evaluate Goodyear's handling of this product, counsel Goodyear on the safe use of this product, and discontinue sale of the product to Goodyear in order to prevent further unsafe exposure to the product and force the implementation of corrective action.

Dkt. #1, ¶ 20(g).

## DISCUSSION AND ANALYSIS

Defendants argue that there is no legal basis to impose a duty upon a chemical manufacturer to evaluate their customers' handling of that chemical, to counsel their customers on the safe use of that chemical or to discontinue sales of a chemical to prevent unsafe exposure or to force corrective action.  Dkt. ##18 & 19.  Defendants also note that to permit these allegations to go forward, the Court would need to find that defendants owed this duty not only to their customers, but to their customers' employees.  Dkt. #19.

Application of New York Law

Jurisdiction of this matter is based upon the diversity of the citizenship of the parties as set forth under 28 U.S.C. § 1332(a), and the amount in controversy, which exceeds $150,000.  Dkt. #1, ¶ 1.  "Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994), *citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."  *Id.* Accordingly, "[w]here the highest court of a state has not resolved an issue, the . . . federal court 'must apply what [it] find[s] to be the state law after giving proper regard to relevant rulings of other courts of the State.'" *Kline v. E.I. DuPont De Nemours & Co., Inc.*, 15 F. Supp.2d 299, 302 (W.D.N.Y. 1998), *quoting Travelers Ins. Co.*, 14 F.3d at 119 (internal quotation omitted).

Summary Judgment Standard

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).  A

fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Duty

"It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff."  *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976).  Thus, the "threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?" *Hamilton v.*

-4-

*Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001).  "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm."  *Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000).  "Foreseeability, alone, does not define duty – it merely determines the scope of the duty once it is determined to exist."  *Hamilton*, 96 N.Y.2d at 232.

"While the Legislature can create a duty by statute, in most cases duty is defined by the courts, as a matter of policy."  *Lauer*, 95 N.Y.2d at 100.  "Courts traditionally and as part of the common-law process fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability."  *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 586.  "Despite often sympathetic facts in a particular case before them, courts must be mindful of the precedential, and consequential, future effects of their rulings, and limit the legal consequences of wrongs to a controllable degree."  *Lauer*, 95 N.Y.2d at 100 (internal quotation omitted).

The New York State Court of Appeals has been particularly cautious in extending liability to defendants for their failure to control the conduct of others.  *Hamilton*, 96 N.Y.2d at 232-33.  "A defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control."  *Id., quoting D'Amico v. Christie*,

71 N.Y.2d 76, 88 (1987).   "This judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another." *Id.* at 233.   As a result, the New York State Court of Appeals has determined that the duty to control others generally arises only in the following circumstances: (1) the relationship between the defendant and the person who threatens the harm to the third person may be such as to require the defendant to attempt to control the other's conduct or (2) there may be a relationship between the defendant and the person exposed to harm which requires the defendant to afford protection from certain dangers including the conduct of others. *Pulka*, 40 N.Y.2d at 783.


There is no evidence that either of these situations is present in the instant case.  The defendants are chemical companies who sold their product to a manufacturer who employed plaintiff Harry D. Weist.  To impose upon the defendants a duty to supervise and evaluate their customers' use of their product and to terminate sales if their customers' use of that product was deemed unsafe would create potentially limitless liability for manufacturers and would circumvent an existing statutory process for ensuring employee safety.  *See* 29 C.F.R. § 1903.3(a) (Compliance Safety and Health Officers of the Department of Labor are authorized to enter . . . any factory . . . or other . . . workplace . . . to inspect and investigate . . . all pertinent conditions . . . equipment and materials therein."); 29 C.F.R. § 1903.7(b) (Compliance Safety and Health Officers shall have authority to take environmental samples and to employ other reasonable investigative techniques," including the "use of devices to measure

-6-

employee exposures."); *see also* N.Y. Labor Law § 875 (legislative history states that "it is consistent to impose upon employers a duty to give each employee notice as to the known and suspected health hazards involved in their employment and place of employment which may cause death or serious physical harm to the employee or members of the employee's family."); N.Y. Labor Law § 876 (3) ("It shall be the responsibility of the employer to obtain information relating to toxic substances from: the manufacturer; the New York [S]tate [D]epartment of [H]ealth; the Federal Environmental Protection Agency's Chemical Substances Information Network; and the Health Hazard Evaluation Program of the National Institute of Occupational Safety and Health.").

Assumption of Duty

In response to the motions for summary judgment, plaintiffs assert that "defendants voluntarily assumed a duty to evaluate and counsel Goodyear on its handling of their product and to terminate the sales relationship, if necessary" because defendants belonged to a trade association, the Chemical Manufacturers Association ("CMA"), which adopted a Responsible Care program in 1988.  Dkt. #22, p.6.  CMA formally announced this program in a full-page advertisement in the New York Times on April 11, 1990.  Dkt. #22-12, pp.2-3.   Plaintiffs also include an undated excerpt from the Product Stewardship Code of the CMA Responsible Care initiative setting forth, *inter alia*, the following management practice:

> Customers and Other Direct Product Receivers: Provides
> health, safety and environmental information to direct
> product receivers.  Commensurate with product risk, works

> with them to foster proper use, handling, recycling, disposal
> and transmittal of appropriate information to downstream
> users.  When a company identifies improper practices
> involving a product, it will work with the product receiver to
> improve those practices.  If, in the company's independent
> judgment, improvement is not evident, then the company
> should take further measures – up to and including
> termination of product sale.

Dkt. #22-14, p.2.  The commentary provides that:

> The objective of this management practice is to encourage
> customers to establish proper health, safety and
> environmental practices involving our products.  While the
> emphasis is on providing information to customers, other
> assistance may be appropriate where the product requires it.
> This management practice recognizes that if those efforts
> are unsuccessful, a company has a range of actions that it
> can take.  Possible actions include, in the exercise of the
> company's independent judgment, not selling a given
> product to the customer.

Dkt. #22-14, p.2.

Assuming for the purposes of the instant motion that this management

practice was in place prior to the conclusion of plaintiff Harry D. Weist's alleged

exposure to ortho-toluidine, it is insufficient to demonstrate defendants' voluntary

assumption of a duty of care to plaintiff Harry D. Weist.  To establish a cause of action

for violation of an assumed duty, the plaintiffs must show (1) that the plaintiffs

reasonably relied on the defendants' assumption of a duty and (2) that the defendants'

conduct placed the plaintiffs in a more vulnerable position than the plaintiffs would have

been had the defendants done nothing.  *See Tavarez v. Lelakis*, 143 F.3d 744, 746-47

(2d Cir. 1998);  *Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp.2d 83, (E.D.N.Y. 2000),

*aff'd*, 4 Fed.Appx. 82 (2d Cir. 2001); *Heard v. City of New York*, 82 N.Y.2d 66, 72

(1993).  In the instant case, there is no indication in the record that plaintiffs had any knowledge of, let alone relied upon defendants' participation in the CMA's Responsible Care program in the performance of his work at Goodyear.  Moreover, there is no evidence to suggest that the CMA's Responsible Care program increased any risk to plaintiffs.   Accordingly, the Court finds, as a matter of law, that plaintiffs failed to state a cause of action under a theory of assumed duty.

Negligent Entrustment

Plaintiffs also allege that paragraph 20(g) asserts a negligence theory "analogous to the duty owed to persons foreseeably endangered by the negligent entrustment of chattel."  Dkt. #22-1, p.2.  Specifically, plaintiffs claim that "a chemical manufacturer who does business with a customer that it knows is likely to carelessly handle its toxic and carcinogenic chemical product in such a manner as to pose an unreasonable risk of harm to its employees may be regarded as having 'negligently entrusted' its product."  Dkt. #22-1, p.2.  Plaintiffs assert that defendants "had the requisite knowledge of Goodyear's incompetent handling of ortho-toluidine" between 1985 and 1988, after six Goodyear employees filed claims against defendants alleging that they developed bladder cancer as a result of their exposure to the chemical at Goodyear.  Dkt. #22-1, p.4.  Plaintiffs specifically rely upon the fact that defendant First Chemical Corporation filed a third-party complaint against Goodyear alleging:

> If the plaintiff sustained damages as alleged in the complaint by reason of fault other than his own, and judgment is recovered against the defendants/third-party plaintiffs, then the liability of the defendants/third-party plaintiffs will have been brought about by reason of the primary carelessness

and negligence of the third-party defendant, GOODYEAR,
without any such carelessness or negligence on the part of
the defendants/third-party plaintiffs who are thereby entitled
to indemnity for any or all of such judgment and in such
amount as shall be ultimately determined upon the trial of
this action.

. . . The primary carelessness and negligence of the third-
party defendant, GOODYEAR, was in using the chemicals
alleged by the plaintiff to have caused injuries in a manner
which was contrary to the instructions given by the
defendants/third-party plaintiffs, in failing to instruct the
plaintiff in the proper methods for handling and working with
such chemicals and in placing the plaintiff in a hazardous
work place.

Dkt. #22-5, pp.10-11.


"The owner or possessor of a dangerous instrument is under a duty to

entrust it to a responsible person whose use does not create an unreasonable risk of

harm to others."  *Hamilton*, 96 N.Y.2d at 236.  "The New York cases which discuss the

tort of negligent entrustment all indicate that the defendant must either have some

special knowledge concerning a characteristic or condition peculiar to the plaintiff which

renders the plaintiff's use of the chattel unreasonably dangerous or some special

knowledge as to a characteristic or defect peculiar to the chattel which renders it

unreasonably dangerous."  *Zara v. Perzan*, 185 A.D.2d 236, 237 (2d Dep't 1992)

(internal citations omitted).  A defendant's superior knowledge of the chattel is

insufficient to support a claim of negligent entrustment.  *Id.*  Rather, the "tort of

negligent entrustment is based on the degree of knowledge the supplier of a chattel has

or should have concerning the entrustee's propensity to use the chattel in an improper

or dangerous fashion."  *Hamilton*, 96 N.Y.2d at 237.

-10-

In the instant case, there is no competent evidence before the Court to suggest that defendants had any reason to question Goodyear's competence to handle ortho-toluidine.  The allegations set forth in the previous lawsuits and the third-party complaint, standing alone, are insufficient to demonstrate such knowledge.  *See UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp.2d 349, 353, n.3 (S.D.N.Y. 2000) (allegations of a complaint calling into question the exclusivity of plaintiffs' copyrights, "having no evidentiary value, cannot defeat a motion for summary judgment.").  Thus, it is the recommendation of this Court that defendants' motion for summary judgment dismissing paragraph 20(g) of plaintiffs' complaint be granted as defendants are under no legal duty, under any theory of negligence, to perform the acts set forth in that paragraph.


## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that defendants' motions for summary judgment (Dkt. ##18 & 19), seeking dismissal of paragraph 20(g) of plaintiffs' complaint be **GRANTED**.


Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby


ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:        Buffalo, New York
              February 8  , 2008

                                        <u>S/ H. Kenneth Schroeder, Jr.      </u>
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**