UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**HARRY D. WEIST and
DIANE M. WEIST, his spouse,**

                          **Plaintiffs,**                05-CV-0534A(Sr)

**v.**

**E.I. DUPONT DE NEMOURS AND
COMPANY, et al.,**

                          **Defendants.**

---

## <u>DECISION AND ORDER</u>

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #4. Following Chief Judge Arcara's recusal, the matter was transferred to the Hon. William M. Skretny. Dkt. #64.

Currently before the Court is plaintiffs' motion to compel disclosure of documents withheld from discovery as protected by the attorney-client and attorney work product privileges in response to plaintiff's demand for documents concerning defendant E.I. DuPont De Nemours and Company's ("DuPont's"), investigation, evaluation and/or knowledge of Goodyear Tire and Rubber Company's ("Goodyear's"), handling practices and safety protocols with respect to ortho-toluidine prior to 1991. Dkt. #108. For the following reasons, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Harry D. Weist has been employed at Goodyear Tire and Rubber Company ("Goodyear"), since December 21, 1977. Dkt. #1, ¶ 7. During the period of 1981 through 1990, he alleges workplace exposure to ortho-toluidine, a chemical which was manufactured and distributed to Goodyear by the defendants. Dkt. #1, ¶¶ 7-8; Dkt. #22-2, ¶ 1. Plaintiffs allege that this exposure caused Harry D. Weist to suffer personal injuries, including bladder cancer, and that his wife, Diane M. Weist, suffers loss of consortium. Dkt. #1, ¶¶ 9 & 24. Plaintiffs seek to hold defendants responsible on theories of strict liability and negligence, including a claim of negligent entrustment. Dkt. #1. Specifically, defendants allege that defendants

> failed in their duty to evaluate Goodyear's handling of [ortho-toluidine], counsel Goodyear on the safe use of this product, and discontinue sale of the product to Goodyear in order to prevent further unsafe exposure to the product and force the implementation of corrective action.

Dkt. #1, ¶ 20(g).

Defendants moved to dismiss the negligent entrustment claim, arguing there was no legal basis to impose a duty upon a chemical manufacturer to evaluate their customers' handling of that chemical, to counsel their customers on the safe use of the chemical or to discontinue sales of a chemical to prevent unsafe exposure or to force corrective action. Dkt. ##18 & 19. By Decision and Order entered March 31, 2008, Judge Skretny denied defendants' motion without prejudice to renewal following completion of sufficient discovery as to whether defendants' had any reason to question Goodyear's competence to handle ortho-toluidine. Dkt. #91.

As set forth in this Court's Report, Recommendation and Order, "the tort of negligent entrustment is based on the degree of knowledge the supplier of a chattel has or should have concerning the entrustee's propensity to use the chattel in an improper or dangerous fashion." Dkt. #82, p.10, *quoting Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 237 (2001). As a result, the Court ordered defendants to disclose any investigation or evaluation they conducted regarding Goodyear's use of ortho-toluidine and to produce representatives for deposition regarding defendants' product stewardship program. Dkt. #95.

Plaintiffs' counsel certifies that he is aware that DuPont had "an established business practice by the mid-1980's of evaluating whether its customers were competent to handle DuPont's products safely," and notes the deposition testimony of DuPont's technical manager for ortho-toluidine, Paul Beach, that by the early 1980's DuPont had made "on-site evaluation of a customer's use of ortho-toluidine a condition of the customer's continued purchase of DuPont's ortho-toluidine," and had conducted an on-site evaluation of the Goodyear plant in Niagara Falls, New York, but has obtained no documentation or deposition testimony regarding the substance of that visit. Dkt. #112, ¶¶ 16-20 & 25. Plaintiffs' counsel further certifies that DuPont has produced nothing to demonstrate that Goodyear was following DuPont's recommendations for the safe handling of ortho-toluidine. Dkt. #112, ¶ 24. Plaintiffs' counsel posits that

> If the business side of DuPont had sent a technical team to the Goodyear plant and investigated how Goodyear was actually using its product, such information should have

> ended up in a non-privileged file. From the discovery
> provided by DuPont to date, it can only be concluded that
> either such a business side evaluation never occurred, or if it
> did happen, the memoranda are no longer available.

Dkt. #112, ¶ 30. Plaintiffs' counsel then surmises that "the only remaining evidence resides within the documents covered by the Privilege Log" and argues that, to the extent these documents contain information concerning DuPont's knowledge of Goodyear's handling practices for ortho-toluidine, they should be disclosed. Dkt. #112, ¶ ¶ 31 & 34.

DuPont's counsel agrees that its "business unit undertook certain measures, including a meeting among the medical and industrial hygiene personnel of the two companies and meetings at the Goodyear plant" and states that documents regarding such measures have been produced. Dkt. #109-2, pp.14 & 16. DuPont has certified that it has disclosed non-privileged documents relating to its investigation, evaluation and/or knowledge of Goodyear's handling practices and safety protocols regarding ortho-toluidine, including documents relating to business meetings and communications with Goodyear and internal business communications concerning Goodyear. Dkt. #109-2, p. 16. DuPont has provided the Court with 288 pages of documents it withheld as privileged, as well as 3 pages of documents previously reviewed by the Court, for *in camera* inspection. Dkt. #102.

## **DISCUSSION AND ANALYSIS**

**Deposition Summaries**

Plaintiffs seek the deposition summaries of DuPont employee Don Martone and Goodyear employees Gino Fontanarosa and Loren Hilts because the deposition transcripts are no longer available and the individuals are all deceased, leaving the deposition summaries as the only record of their testimony. Dkt. #108-3, pp.3-4. Although L. Christine Oliver, M.D. is alive, plaintiffs argue that absent discovery of the deposition transcript itself, the summary of her deposition on October 2, 1986 is the most reliable evidence of Dr. Oliver's investigation of the handling of ortho-toluidine at the Goodyear plant on behalf of the international union. Dkt. #108-3, p.4.

DuPont argues that the deposition summaries are protected by the attorney work product privilege and challenges plaintiffs' assertion of substantial need and undue hardship, stating that any information contained in the deposition summaries plaintiffs seek are "cumulative and duplicative of the vast amount of information already available to plaintiffs from other depositions taken before 1991 and from the thousands of documents produced before 1991." Dkt. #109-2, pp.12-13. DuPont states that plaintiffs "need only look at the transcripts and discovery responses to determine the extent of DuPont's knowledge of Goodyear's ortho-toluidine handling practices, at least to the extent that knowledge derived from lawsuits." Dkt. #109-2, p.12.

The attorney work product privilege is designed to protect the mental impressions and thought process of lawyers "from unnecessary intrusion by opposing

parties and their counsel." *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The attorney work product privilege is not limited to opinions and strategies, but also encompasses facts. *See Doe v. United States (In re Grand Jury Subpoena dated October 22, 2001)*, 282 F.3d 156, 161 (2d Cir. 2002). However, the privilege is not absolute. *United States v. Nobles*, 422 U.S. 225, 239 (1975).

> Where relevant and nonprivileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production . . . .

*Hickman*, 329 U.S. at 511-12.

The principles embodied by *Hickman* are set forth in Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, which provides as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

>    (i)   they are otherwise discoverable under Rule 26(b)(i); and
>
>    (ii)  the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Rule 26(b)(3)(B) of the Federal Rules of Civil Procedure provides:

> If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

The deposition summaries are attorney work product. *See S.E.C. v. Strauss,* No. 09 Civ. 4150, 2009 WL 3459204, at *5 (S.D.N.Y. Oct. 28, 2009) ("By definition, summaries are not verbatim copies and necessarily involve some level of judgment in deciding what to note and what not to note."); *In re Atlantic Fin. Mgmt. Sec. Litig.,* 121 F.R.D. 141 (D. Mass. 1988) ("An attorney's summaries of testimony certainly reveal his or her mental impressions or opinions about the case."). With respect to the deposition summaries from transcripts plaintiffs possess, plaintiffs' cannot demonstrate need to breach the attorney work product privilege. With respect to the deposition summaries from transcripts which are no longer available, *to wit*, summaries of the depositions of Don Martone, Gino Fontanarosa, Loren Hilts and Dr. Oliver, the Court has determined that the facts contained within the summaries are not essential to the preparation of plaintiffs' case because the deposition summaries do not describe Goodyear's handling of ortho-toluidine between 1985 and 1990 nor do they contain information supporting plaintiffs' claim that DuPont knew or should have known that

Goodyear was not following DuPont's instructions for the safe handling of ortho-toluidine during this time period. Accordingly, this aspect of plaintiffs' motion to compel is denied.

**Correspondence/Memoranda within DuPont**

Plaintiffs seek disclosure of the following correspondence:

1. DPW02393-8 – 2/28/90 Memo from DuPont Chemist Leo Zeftel to DuPon't in house counsel, John Bowman responding to counsel's request for information and analysis regarding certain chemical compounds; and

2. DPW02476-7 – 5/7/90 Memo from K.D. Dastur, DuPont's Manager of Regulatory Affairs, to John Bowman commenting upon public documents

on the ground that the documents were not prepared by DuPont's attorneys or by an agent of DuPont's attorneys. Dkt. #108-3, pp.4-5.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419.

The attorney-client privilege attaches to corporations as well as to individuals. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348

(1985). However, the administration of this privilege presents special problems in the case of corporations:

> As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.

*Id.*

In *Upjohn Co. v. United States*, the Supreme Court addressed who was protected by the privilege in the corporate context and determined that protected communications were not restricted to the highest level of management, but could also cover "lower-level employees." *Id., citing Upjohn Co. v. United States*, 449 U.S. 383, 391 (1981). More specifically, the *Upjohn* Court stated that

> Middle-level – and indeed lower-level employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

449 U.S. at 391. In that case, the Chairman of the Board directed all foreign general and area managers to respond to a questionnaire developed by the company's general counsel as part of his investigation into the possibility that several American companies made possibly illegal payments to foreign government officials. *Id.* at 337. The questionnaire sought detailed information concerning such payments from these employees. *Id.* The Court noted that

> Managers were instructed to treat the investigation as "highly confidential" and not to discuss it with anyone other than Upjohn employees who might be helpful in providing the requested information. Responses were to be sent directly to [general counsel]. [General counsel] and outside counsel also interviewed the recipients of the questionnaire and some 33 other Upjohn officers or employees as part of the investigation.

*Id.* The Supreme Court held that the communications by Upjohn employees to counsel were covered by the attorney-client privilege. *Id.* at 397.

"The Supreme Court's functional approach in *Upjohn* thus looked to whether the communications at issue were by the Upjohn agents who possessed relevant information that would enable Upjohn's attorney to render sound legal advice." *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001). In other words, "statements made by employees, of any station or level within a corporation or a sophisticated business structure, to an attorney or the attorney's agent which were done in confidence and outside the purview of others are protected." *Lugosch v. Congel*, No. Civ. 00-CV-784, 2006 WL 931687, at *14 (N.D.N.Y. 2006).

The initial document, DPW0293-8, is protected by the attorney-client privilege as it is a communication from DuPont Chemist Leo Zeftel to DuPont's in house counsel, John Bowman, responding to counsel's request for information and analysis regarding chemical compounds at issue in the Goodyear employees' lawsuits. However, the second document, DPW02476-7, was circulated to numerous DuPont employees for information and action and does not appear to seek legal advice or

otherwise advance DuPont's legal strategy in the Goodyear employees' lawsuits. Thus, plaintiffs' motion to compel is granted with respect to document DPW02476-7.

**Attorney Correspondence with Experts**

Plaintiffs argue that letters written by DuPont's in-house counsel to five outside experts in 1989 and 1990 should be disclosed because the experts are neither attorneys nor clients and because the experts were named as testifying experts in prior cases on December 20, 1989. Dkt. #108-3, p.5.

DuPont responds that plaintiffs are inappropriately relying upon the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure and note that only one of the five experts, Dr. Cole, is testifying in this action and that Dr. Cole did not rely upon the letter in formulating his opinions in this action. Dkt. #109-2, p.13.

The Court finds no reason to depart from the procedure set forth in Fed. R. Civ. P. 26(a)(2) with respect to any witness retained or specially employed to provide expert testimony in this case. Thus, to the extent that Dr. Cole has been retained as an expert witness in this matter, he shall disclose, at the appropriate time, the data or other information considered by him in forming his opinions. With respect to counsel's correspondence to expert witnesses who have no involvement with this action at a time when expert witnesses were merely required to disclose the substance of their testimony, the Court determines that such correspondence is protected attorney work product. Thus, the correspondence will only be ordered disclosed if the Court

determines that plaintiffs have substantial need for the materials to prepare their case and cannot, without undue hardship, obtain their substantial equivalent by other means. Upon review of the correspondence, the Court discerns no such need.

**Remaining Documents**

Plaintiffs argue that every document referenced in Du Pont's privilege log "presents unique evidence which cannot be obtained or recreated through other means" and should be disclosed "to permit discovery of their factual content or their ordinary work product." Dkt. #108-3, p.6.

The Court has reviewed the remaining documents provided for *in camera* inspection and has determined that DuPont's assertion of attorney-client privilege and attorney work product privilege is appropriate and that DuPont's claim of attorney work product privilege is not overcome by substantial need for disclosure of the documents to prepare plaintiffs' case .

**Reconsideration of Prior Order**

Plaintiffs ask the Court to reconsider its determination that two documents previously submitted to the Court for in camera review were protected by the attorney-client and work product privileges. Dkt. #108-3, p.10.

DuPont responds that plaintiffs request for reconsideration is untimely and that plaintiffs have failed to establish any circumstance which would warrant

reconsideration of the Court's prior determination that the documents were protected. Dkt. #109-2, pp.3-4.

The Court discerns no oversight or omission in its prior Order denying disclosure of DPW02034-35 and DPW02036. Accordingly, plaintiffs' request for reconsideration of that Order is denied.

## **CONCLUSION**

Based on the foregoing, plaintiffs' motion to compel disclosure is granted with respect to document DPW02476-7 and denied with respect to the remaining documents submitted to the court for *in camera* inspection.

**SO ORDERED.**

DATED:	Buffalo, New York
	March 9, 2010

	 s/ H. Kenneth Schroeder, Jr.
	H. KENNETH SCHROEDER, JR.
	United States Magistrate Judge