**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**HARRY D. WEIST and**
**DIANE M. WEIST, his spouse,**

                          **Plaintiffs,**          05-CV-0534A(Sr)

v.

**E.I. DUPONT DE NEMOURS AND**
**COMPANY, et al.,**

                          **Defendants.**

---

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #4. Following Chief Judge Arcara's recusal, the matter was transferred to the Hon. William M. Skretny. Dkt. #64.

Currently before the Court is plaintiffs' motion to compel the deposition of John Bowman (Dkt. #123), and defendant E.I. DuPont De Nemours and Company's ("DuPont's"), motion for a protective order. Dkt. #126. For the following reasons, plaintiffs' motion is granted in part and defendant's motion is denied.

## BACKGROUND

Plaintiff Harry D. Weist has been employed at Goodyear Tire and Rubber Company ("Goodyear"), since December 21, 1977. Dkt. #1, ¶ 7. During the period of

1981 through 1990, he alleges workplace exposure to ortho-toluidine, a chemical which was manufactured and distributed to Goodyear by the defendants. Dkt. #1, ¶ ¶ 7-8; Dkt. #22-2, ¶ 1. Plaintiffs allege that this exposure caused Harry D. Weist to suffer personal injuries, including bladder cancer, and that his wife, Diane M. Weist, suffers loss of consortium. Dkt. #1, ¶¶ 9 & 24. Plaintiffs seek to hold defendants responsible on theories of strict liability and negligence, including a claim of negligent entrustment. Dkt. #1. Specifically, plaintiffs allege that defendants

> failed in their duty to evaluate Goodyear's handling of [ortho-toluidine], counsel Goodyear on the safe use of this product, and discontinue sale of the product to Goodyear in order to prevent further unsafe exposure to the product and force the implementation of corrective action.

Dkt. #1, ¶ 20(g).

Defendants moved to dismiss the negligent entrustment claim, arguing there was no legal basis to impose a duty upon a chemical manufacturer to evaluate their customers' handling of that chemical, to counsel their customers on the safe use of the chemical or to discontinue sales of a chemical to prevent unsafe exposure or to force corrective action. Dkt. ##18 & 19. By Decision and Order entered March 31, 2008, Judge Skretny denied defendants' motion without prejudice to renewal following completion of sufficient discovery as to whether defendants' had any reason to question Goodyear's competence to handle ortho-toluidine. Dkt. #91.

As set forth in this Court's Report, Recommendation and Order, "the tort of negligent entrustment is based on the degree of knowledge the supplier of a chattel

has or should have concerning the entrustee's propensity to use the chattel in an improper or dangerous fashion." Dkt. #82, p.10, *quoting Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 237 (2001).  Thus, the Court identified the relevant issue to be resolved as "whether there is any evidence to suggest that defendants knew or should have known that Goodyear was likely to mishandle ortho-toluidine."  Dkt. #103, p.6.  As a result, the Court ordered defendants to disclose any investigation or evaluation they conducted regarding Goodyear's use of ortho-toluidine and to produce representatives for deposition regarding defendants' product stewardship program.  Dkt. #95.  Thereafter, by Order entered April 27, 2009, the Court ordered DuPont to produce a witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure who could testify as to DuPont's investigation, evaluation and/or knowledge of Goodyear's handling practices, safety protocols, *etc.*, with respect to ortho-toluidine prior to 1991.  Dkt. #105.

Plaintiffs assert that DuPont has failed to produce a single document concerning any investigation or evaluation regarding Goodyear's use of othro-toluidine.  Dkt. #123-2, ¶ 11.  Plaintiffs also assert that DuPont's 30(b)(6) witness, William C. Haaf, never had any involvement with the Goodyear plant during his employment with DuPont and admitted at his deposition that he had not been provided with any information concerning DuPont's investigation or evaluation of Goodyear's use of ortho-toluidine in connection with seven lawsuits by other Goodyear workers with bladder cancer.  Dkt. #123-2, ¶ 13. Plaintiffs contend that the defendants gathered sufficient knowledge of the inadequacies of Goodyear's ortho-toluidine handling practices from

their investigation into and discovery conducted during the course of seven civil lawsuits filed against DuPont between 1985 and 1990 by ten Goodyear workers who had developed bladder cancer.  Dkt. #123-2, ¶ 6.

DuPont states that in response to the Court's Order, it produced memos documenting meetings between DuPont and Goodyear personnel in 1989 and 1990 concerning the safe handling of ortho-toluidine and a July 1990 meeting with Goodyear personnel at DuPont's Chambers Works regarding the proper handling of ortho-toluidine.  Dkt. #126-2, p.5.

On March 10, 2010, plaintiffs served DuPont with a notice for the deposition of DuPont's retired corporate counsel, John R. Bowman.  Dkt. #123-2. Plaintiffs argue that Mr. Bowman "is the only remaining repository of information on the issue of what DuPont knew of Goodyear's ortho-toluidine handling practices" and insist that they "need to take Mr. Bowman's deposition and determine the facts which he obtained from the litigated claims" in order to defend against a renewed motion for partial summary judgment.  Dkt. #123-2, ¶ 20.

DuPont objected to the deposition on the grounds that any possible testimony would be protected by both the attorney-client and the attorney-work product privileges.  Dkt. #123-5.

## DISCUSSION AND ANALYSIS

Plaintiffs argue that there is nothing privileged about Mr. Bowman's factual knowledge of the conditions inside the Goodyear plant. Dkt. #128, p.8. More specifically, plaintiffs assert that

> It is undisputed that, between 1985 and 1990, all information gathered by DuPont's outside counsel flowed through Mr. Bowman's office. What Mr. Bowman learned about Goodyear's handling practices for ortho-toluidine is relevant to this Court's ultimate ruling on the negligent entrustment cause of action. These facts are not privileged.

Dkt. #123-3, p.3.

DuPont argues that, with the exception of knowledge gained from discovery in prior litigation on this issue, which plaintiffs' counsel received during the course of discovery in those cases, Mr. Bowman's knowledge of Goodyear's ortho-toluidine handling practices derives entirely from his communications with DuPont's outside attorneys or its business unit and is protected from disclosure by the attorney-client and attorney work-product privileges. Dkt. #126-13, p.4. DuPont notes that plaintiffs' counsel also participated in the seven prior lawsuits, thereby obtaining "everything that Mr. Bowman learned from 1985 through 1990 through discovery conducted in the prior cases." Dkt. #126-2, ¶ 22. Such discovery includes depositions of numerous Goodyear management and supervisory personnel, including the corporate medical director and operations and purchasing managers, as well as sixteen of plaintiff's co-workers. Dkt. #129, ¶¶ 16-17. DuPont further notes that

> Plaintiffs do not assert that Mr. Bowman had any direct contact with Goodyear, visited any Goodyear facility,

> interviewed any Goodyear personnel, conducted any investigation, or participated in any meetings with Goodyear personnel on the subject of Goodyear's handling of ortho-toluidine between 1985 and 1990. Plaintiffs make no claim that Mr. Bowman gained any knowledge of the facts from 1985 through 1990 other than what he learned through attorney-client communications, through his own attendance at depositions, or from his review of documents produced in other discovery materials.

Dkt. #126-2, ¶ 20. In addition, DuPont states that its manager for ortho-toluidine, Paul E. Beach, has been deposed twice, and was questioned about communications with Goodyear in both depositions. Dkt. #126-2, ¶ 23. Finally, DuPont notes that the individuals identified in the DuPont documents memorializing the 1989 and 1990 meetings between DuPont and Goodyear concerning the safe handling of ortho-toluidine have not been noticed for deposition. Dkt. #126-2, ¶ 23.

Plaintiffs' counsel responds that he did not participate in discovery with respect to all of the prior cases and notes that deposition transcripts and discovery documents from one of the previous lawsuits have been lost. Dkt. #126-12, p.2 & Dkt. #128, p.1. Specifically, plaintiffs' counsel notes that

> eight transcripts of depositions taken in the *Schiro* case are missing . . . . They include depositions of two workers from the Goodyear plant and a DuPont employee who may have had involvement with Goodyear. As previously explained, all of these witnesses are now deceased . . . . But, Mr. Bowman may have reviewed those transcripts in 1987.

Dkt. #128, p.2. Finally, plaintiffs' counsel reiterates that "[t]here is nothing privileged about Mr. Bowman's knowledge of the conditions inside the Goodyear plant." Dkt. #128, p.8.

-6-

"The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark." *In re Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (internal quotation omitted); *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."). "However, pursuant to Rule 26(c), the court may limit discovery even if the information sought is relevant." *Tisby v. Buffalo General Hosp.*, 157 F.R.D. 157, 170 (W.D.N.Y. 1994); *Coyne v. Houss*, 584 F. Supp. 1105, 1109 (E.D.N.Y. 1984); *See* Rule 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.").

"Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery." *Friedman*, 350 F.3d at 70; *see U.S. v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (1991) ("depositions of opposing counsel are disfavored."). Among the myriad reasons for such concern is the prospect of "intruding on attorney-client privilege." *Id.* As a result, the Court of Appeals for the Second Circuit has instructed district courts to consider "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship," including, but not limited to, "the need to depose the lawyer, the lawyer's role in connection with the matter on

which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* at 72.

It bears repeating that the question plaintiffs seek to answer with respect to the negligent entrustment claim is "whether there is any evidence to suggest that defendants knew or should have known that Goodyear was likely to mishandle ortho-toluidine." Dkt. #103, p.6.  As in-house counsel during at least portions of plaintiff's exposure and the prior lawsuits, Mr. Bowman is in a position to clarify the extent of DuPont's knowledge of conditions inside the Goodyear plant during the period of plaintiff's exposure and DuPont's investigation and/or inspection of Goodyear's handling practices and plant conditions.  Having retired prior to the commencement of this action, there is less concern that Mr. Bowman's deposition will unduly burden DuPont's defense of this action.  Finally, although the Court is sensitive to the fact that Mr. Bowman, as prior counsel to DuPont, possesses information protected by the attorney client and attorney work product privileges, the Court is confident that plaintiffs' counsel can tailor his questions to avoid privileged information and that Mr. Bowman can distinguish non-privileged facts from privileged communications and work product.  The Court is similarly confident that the deposition can be conducted at a location convenient to Mr. Bowman without the necessity for direct court supervision.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion to compel (Dkt. #123), is granted in part and defendant's motion for a protective order (Dkt. #126), is denied.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**March 31, 2011**

                                                s/ H. Kenneth Schroeder, Jr.
                                               **H. KENNETH SCHROEDER, JR.**
                                               **United States Magistrate Judge**